Charles **WILSON**, Appellant,

v.

**CITY OF JEFFERSONTOWN**, Kentucky and City Council of Jefferson-town, Appellees.

Court of Appeals of Kentucky.

June 14, 1974.

Manny H. Frockt, Frockt & Benovitz, P.S.C., Louisville, for appellant.

Joseph P. Pike, Louisville, for appellees.

PALMORE, Justice.

Charles Wilson, a police officer of Jeffersontown, a city of the fourth class, KRS 81.010, brought this suit against the city in the Jefferson Circuit Court alleging that he had been discharged without cause and demanding, among other things, that

he be reinstated and given back wages. He appeals from a judgment sustaining the action of the city. We find no error.

The statute under which the appellant claims protection against discharge without cause is KRS 95.700, which provides in part as follows: "(2) Except in cities of the fourth class which have accepted and adopted KRS 95.761 to 95.784, the term of office of members of the police department appointed by the city legislative body shall not exceed two (2) years. The city legislative body shall reappoint to their office, members of the police department who have not yet reached the age of retirement unless sufficient cause be shown for the failure to reappoint them. They shall be subject to removal for cause."

Jeffersontown not having adopted a police and firemen's civil service system as authorized by KRS 95.761 et seq., the administrative procedures therein provided for the suspension and removal of its police officers were not applicable.

Wilson was given a 2-year appointment by the city council in January of 1970. In June of the same year he was placed on probation for a period of 90 days upon the ground that he had violated a regulation against riding in a police vehicle except when necessary in the performance of police duty. On Sunday, August 7, 1970, while he was on duty, the owner of the Jeffersontown Shopping Center asked him to give a violation ticket to the operator of a truck which was being loaded with the merchandise and equipment of a vacating tenant and was parked in a fire lane. Upon Wilson's refusal to do so the owner of the shopping center telephoned the mayor and was referred by him to the chief of police, who was at home. Accompanied by a county police officer, Wilson went to the chief's home to discuss the matter. There is a conflict in the evidence as to what was said during this conference, but suffice it to say that according to the chief, although admittedly there had been some confusion among his officers as to whether they should or should not give out fire-lane violation tickets, on this particular occasion he categorically directed Wilson to issue the ticket. Wilson said he would not do so, and the chief then told Wilson "that if he didn't want to issue the ticket or take my orders that he should go see the man that gave me my orders [that is, the mayor] and this was the crux of the whole thing."

Following this discussion with the chief of police Wilson went to see the mayor, and it is not disputed that the mayor directed him to issue the ticket. Wilson says that he returned to the shopping center with the intention of complying with the order but that the truck was gone and he was unable to do so. The mayor, on the other hand, testified that a few minutes later he drove through the shoppping center to see what the trouble was and that the truck was still there.

During the next two days Wilson issued 17 tickets for fire-lane violations, six of which were in the Greenbriar Shopping Center, where no fire lanes had been marked. On August 11, 1970, the chief of police informed him that he was being or had been suspended by the mayor for not using discretion in issuing tickets. On August 17, 1970, the mayor filed in the office of the city clerk a written statement of charges against Wilson, but neither Wilson nor his attorney had actual notice of its contents until they attended a meeting of the city council on August 27, 1970, at which meeting the city council conducted a hearing and adopted a resolution discharging him.

One of Wilson's contentions is that the hearing held by the city council on August 27, 1970, did not afford him procedural due process. The answer is that the statute does not require a hearing. See Bell v. Board of Education of McCreary County, Ky., 450 S.W.2d 229, 231–232 (1970), pointing out that when there is no

provision for an administrative hearing the circuit court is the forum and the issue is arbitrariness.

Under KRS 95.700 a dismissal without reasonable cause is arbitrary and will not be sustained. City of Pikeville v. May, Ky., 374 S.W.2d 843, 845 (1964). The complainant has the burden of proving the absence of reasonable cause. City of Richmond v. Howell, Ky., 448 S.W.2d 662, 665 (1969); Kilburn v. Colwell, Ky., 396 S.W.2d 803, 804 (1965). After hearing all of the evidence offered on both sides the chancellor found in substance that Wilson's insubordination and his poor judgment in issuing the violation tickets at Greenbriar Shopping Center, coupled with the fact that he was then on probation for a previous infraction of departmental regulations, provided a sufficiently substantial basis for the dismissal to prevent its being held arbitrary. Upon a review of the evidence we cannot say otherwise.

The judgment is affirmed.

All concur.